FOWLER and wife *vs.* COLT and others.

1. A testator directed $40,000 .to be held in trust for his grandson, to be paid to him when he arrived at the age of twenty-five years, with the increase thereon by accumulation. The testator died in 1856. The executors did not separate any sum of $40,000 from the rest of the estate for the purpose of this trust. The great bulk of the estate remained invested in the stock of the Society for Useful Manufactures, of which it consisted at the testator's death. The par value of it was $100 per share; its real value at. testator's death, $250 ; and its present value $300 per share. The society had mortgage debts at' testator's death, many of which have since been paid off out of its assets, and have bought and sold real estate, but to what value does not appear. It declared irregular dividends on the shares since his death, not based upon the earnings of the society, but upon the necessities of the executors and testator's children. These have vaiied from four to seven per cent yearly, on the par value of the shares. The master was directed to allow interest at the rate of seven per cent. for the time in which the executors received the interest at that rate, and at the rate of six per cent. during the residue of the time. He has computed interest at seven per cent. during that part of the time in which the executors received dividends at that rate on the par value of these shares, and allowed interest. upon interest. The exceptants contend that interest should be allowed at. that rate only when the dividends amounted to seven per cent. on the real value of the shares in which the estate was invested, and that interest should not have been calculated upon interest. *Held,* that the master rightly allowed the seven per cent. on the par value during the time that that rate of interest was paid, and that the interest was properly computed. by yearly rests.

2. The funeral expenses of the granddaughter of the testator, and the physician's bill in her last illness, cannot be ordered to be paid out of the testator's estate, there being no estate of her own out of which these expenses can be paid. She was under the age of eighteen years at her death,. in September, 1866. The income of $20,000 directed to be held in trust for her had, by order of the court, been expended in her education and support, except $789, which was the increase by accumulation. The testator directed,. if she should die without issue under twenty-five, that the sum of $20,000 given to her, with the acumulations thereon, be added to his general estate, and considered as part thereof. That estate he gave to three of his children, then living. The will also directed that the granddaughter should be educated and supported out of this income until she was eighteen. The medical expenses exceeded the surplus of $789. *Held,* that the granddaughter being entitled to the whole of the income for her support, there could be no accumulation in the sense in which that word is used in the will, so long as the physician's bill, or any expenses incurred by or for her

in her lifetime remain unpaid, and that the surplus must therefore be applied to the medical expenses. If the medical expenses did not absorb the surplus, the funeral expenses would also be included in this provision for her support and maintenance, and any balance would have been applied for that purpose. But the principal of $20,000 was not subject to her support and maintenance, in case of her dying under twenty-five, but was vested in the legatees. These expenses cannot be ordered to be paid out of the estate of the testator.

3. A gift of a fund with its increase from accumulation, amounts to a direction to the executor to accumulate, which can only be done by putting it at interest. And where the fund is large, and the time for holding it in trust long, this direction must be held to apply to the interest as well as to the principal.

4. In all cases where the will contains no directions as to commissions or expenses of administration, specific legacies and bequests of specific sums are not charged with them, but are paid in full, and the commissions are taken from the residue, or such assets as are not disposed of.

5. If a father does not sufficiently provide for the support of a child or one to whom he stands *in loco parentis*, the courts cannot take from the legacies to others to furnish such support, or pay funeral expenses in case of death. When a legacy to a child of the testator is directed to be paid on a future day, with no direction as to interest, in the case of an infant having no other means of support, they will order interest to be paid.

6. Where a fund is given at a future day to several, with provision that if any die, their share should go the survivors, support for all will be ordered out of the fund; but this is only in cases where all are included in the contingency of advantage from the gift over, and of loss by dying before the time specified. And in such case when there is an absolute gift over on the death of all it will not be ordered, unless by consent of the person to whom it is so given.

On exceptions to master's report, made on petition of R. L. Colt, junior.

*Mr. W. Pennington* and *Mr. Ashbel Green*, for exceptants.

*Mr. C. Parker*, for R. L. Colt, junior.

THE CHANCELLOR.

By an order made by written consent of parties, it was referred to a master to report the interest due to the petitioner, on the sum of $40,000, directed to be held in trust

for him by the will of his grandfather, R. L. Colt, and to be paid to him when he arrived at the age of twenty-five years, with the increase thereon by accumulation. The testator died in 1856, but the executors never put aside any sum of $40,000, or in any way separated it from the rest of the estate, to be held for this trust. The whole, or the great bulk of the estate, remained invested in the stock or shares of the Society for Useful Manufactures, of which it consisted at the testator's death. The par value of this stock was $100 per share, its real value at the death of the testator was $250, and its present value $300 per share. The society had mortgage debts at the death of the testator, many of which have since been paid off out of its assets, and have bought and 'sold real estate, but to what values does not appear. It declared irregular, desultory dividends on the shares since the death of the testator, not according to or based upon the earnings of the society, but upon the necessities of the executors and the testator's children. These have varied from four to seven per cent. yearly, on the par value of the shares. The master was directed to allow interest at the rate of seven per cent. for the time in which the executors received interest at that rate, and at the rate of six per cent. during the residue of the time.

He has computed interest at the rate of seven per cent. during that part of the time in which the executors received dividends at that rate, on the par value of these shares. The exceptants contend that it should be allowed at that rate only when the dividends amounted to seven per cent. on the real value of the shares in which the estate was invested. The only question is upon the meaning of the order, or rather of the agreement between the parties, for that order is only an agreement put in the form of an order, and I cannot go back of it and look into the equity of the case, or real rights of the parties.

The " money belonging to the petitioner," to use the words of the order, was at that time in the shares of the company, and the dividends upon those shares was the only interest

received. There was no money actually set aside for and belonging to him, and it might be argued that there was no interest received on it by the executor. This would clearly not accord with the intention of the parties to that agreement. They knew how this estate was invested, and that the only interest received was these dividends, which for part of the time were at seven per cent. on the par value, and at other times less. And this order must be construed to refer to these dividends on the par value, as the rate of interest referred to. I think the master has rightly construed this order, and that this exception must be overruled.

The next exception is to the mode of computing interest by yearly rests, so as to charge compound interest. As the will gives the fund set aside, with its increase from accumulation, it must be held to direct the executor to accumulate, which can only be done by putting it at interest. And where the fund is so large, and the time for holding it in trust is so long, as in this case, this direction must be held to apply to the interest as well as the principal. And without regard to this direction, a trustee would not be permitted to allow amounts of interest so large as those received in this case, to lie idle for years uninvested. The master was right in calculating interest by yearly rests.

M. G. Colt, the acting executor, excepts to the report on the ground that the master has not allowed commissions on the principal of this legacy. And the petitioner excepts, because the master has allowed commissions on the income paid the petitioner since he arrived at twenty-one.

As far as can be gathered from the report, and the account annexed, for they are not explicit or very clear on this point, the master has allowed commissions at the rate of two and a half per cent., as against R. L. Colt, junior, on the income paid to him, but has not charged it upon the principal of the legacy. R. L. Colt, junior, excepts because he is charged with this commission on the income. The executor excepts, because R. L. Colt, junior, is not charged with the commis-

sion on the principal, and because it is left to be paid out of the estate.

It seems to me that both questions depend upon the construction of the last clause of the codicil. That directs that the executor "shall charge a commission of two and a half per cent. on the sums he shall pay out of the trust created for the support and education of my said three grandchildren." The testator directed in his will that $10,000 should be paid out of his estate to his executor, for his services as acting executor and trustee of his will. In the will he gave to the three children of his deceased son, Roswell, of whom R. L. Colt, junior, is one, an equal fourth part of his whole estate, to be equally divided between them, and directed the income to be applied to their support and education, until of age, and then the income of the share of each to be paid to him during his natural life, and the principal on his death to his lawful issue; and directed that his acting executor should be allowed a commission of five per cent. on the yearly income of said share, until disposed of as directed. The provision in the will only allows a commission on the income; it is confined to that by the words. I think the words of the codicil confine the commission to the income, even without reference to the provision on the same subject in the will.

In the codicil the provision is, "that after my said grandson, R. L. Colt, junior, shall arrive at the age of twenty-one years, the whole yearly income of said $40,000 shall be paid to him until he arrive at the age of twenty-five years, *if he shall live so long ;* and, in the mean time, that he be well educated and properly supported, out of the income he derives from his father's estate, and from the interest of this conditional bequest."

The trust of the principal was created by the direction to hold $40,000 for the benefit of his grandson, to be paid to him when he arrived at the age of twenty-five years, with the increase from accumulation. This clearly was not a trust created for his "support and education." On that alone is

the commission allowed. The trust created for that purpose was only so much of the interest as was appropriated for it before the grandson was twenty-one. After that the income is not to be paid for support and education, but is to be paid to him absolutely, for any purpose he may choose to use it. The master was clearly right in not charging any commission on the principal of this legacy, as against R. L. Colt, junior.

The question raised by the exception of R. L. Colt, junior, is whether the commission which the executor is clearly entitled to charge on the income expended for education and support while under twenty-one, should be charged against the legacy and deducted from it, or whether it should come out of the estate and fall upon the residuary legatees.

In all cases where the will contains no directions as to commissions or expenses of administration, specific legacies, and bequests of specified sums, are not charged with them, but are paid in full, and the expenses and commissions are taken from the residue, or such assets as are not disposed of. A gift of $40,000, or the income of $40,000, would entitle the legatee to the exact amount, without any deduction, if the estate is not exhausted. A testator can charge such legacy, with its proportion of commissions, and other expenses, but for this his directions must be explicit and clear.

In this case, the direction is simply that the executor shall be paid a commission " on the sums he shall pay," not *out* of the sums that he shall pay. There are some reasons for conjecturing that his intention was or might have been that these commissions should be charged to these grandchildren, and not that they should be paid " out of his estate," as he directed the $10,000 to be paid. But these reasons are not, in my judgment, sufficient to overturn the well settled rule, as against these grandchildren, who receive far less than the fourth part of the estate which would have come to their father by an equal division. I do not feel justified in further reducing their shares, without a more clear declaration of his

intention than can be gathered from the will. The exception as to this part of the report must be sustained.

Another question submitted for my determination, by agreement of the parties, is, whether the amount due for the funeral expenses of Margaret Colt, a granddaughter of the testator, and the physician's bill in her last illness, can be ordered to be paid out of the estate of the testator, there being no estate of her own out of which these expenses can be paid. She was under the age of eighteen years at her death, in September, 1866. The income of $20,000, directed to be held in trust for her, had, by order of the court, been expended in her education and support, except $789, which was the increase by accumulation. The testator directed, if Margaret should die without issue under twenty-five, that the sum of $20,000 given to her, with the accumulation thereon, be added to his general estate, and considered as part thereof. That estate he gave to three of his children then living. This gift included this sum of $20,000, and the accumulation on it.

But as the direction was that Margaret should be educated and supported out of this income until she was eighteen, she was entitled to have the whole of the income expended for such support, and there could be no accumulation in the sense in which that word is used in the will, as long as the physician's bill, or any expenses for her in her lifetime, remain unpaid. The medical expenses unpaid, I understand, exceed the surplus of $789, and of course that must be applied to these expenses. And in case they did not absorb the whole amount, I have no hesitation in including her funeral expenses in this provision for her support and maintenance.

But the principal was not subject to her support and maintenance in case of her dying under twenty-five. It was given over, and the title to the remainder was vested in the legatees to whom it was so given.

If a father does not sufficiently provide for the support of a child, or one to whom he stands *in loco parentis*, the

courts cannot take from the legacies to others to furnish such support, or pay funeral expenses in case of death. The farthest they have gone is to order, where a legacy is directed to be paid on a future day, with no direction as to interest, that in case of an infant child having no other means of support, interest should be paid on such legacy for the support; presuming that the testator must have so intended. And where a fund is given at a future day to several, with provision that if any die their share should go to the survivors, support for all will be ordered out of the fund; but this is only in cases where all are included in the contingency of advantage from the gift over and of loss by dying before the time specified. And in such case when there is an absolute gift over on the death of all, it will not be ordered unless by consent of the person to whom it is so given. *Greenwell* v. *Greenwell*, 5 *Ves.* 194; *Cavendish* v. *Mercer*, *Ibid.* 195, *n.* (a); *Fendall* v. *Nash*, *Ibid.* 197, *n.* (a); *Evans* v. *Massey*, 1 *Y. & J.* 196; *Kime* v. *Welfitt*, 3 *Sim.* 533; *Errington* v. *Chapman*, 12 *Ves.* 20; *Ex parte Kebble*, 11 *Ves.* 604; .*Errat* v. *Barlow*, 14 *Ves.* 202; *In re Davison*, 6 *Paige* 138; *Ex parte Ryder*, 11 *Paige* 186.

The case of *Coomes* v. *Elling*, in 3 *Atk.* 676, which was urged on the argument as a precedent for funeral expenses, was only as to the orphanage share of the daughter of a freeman of the city of London; this was preserved to her by the custom of London against the will of her father, and by the same custom, on her death under twenty-one went to her brother, and could not be bequeathed, like her other property, by a will executed when over seventeen. It was held that this share went to her brother, liable to her debts and funeral expenses, and that, being property as to which she died intestate, it was, in accordance with the settled rules of administration, liable to them, before the property as to which her will was valid, or the legatory property, as it is called in the report. By the custom, a freeman can bequeath one-third of his effects; one-third goes to his widow, and one-third to his children; and John Coomes, the free-

man, had left a portion of the third subject to his disposal, to his daughter Mary; this was that called the legatory part.

Had Margaret Colt, at her death, owned absolutely assets which, by reason of her infancy, she could not have bequeathed, these assets would have been liable to her funeral expenses. This is all that is decided in Coomes v. Elling.